# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY, and
SIERRA CLUB**,

        **Plaintiffs,**

      **v.**                        **CIVIL ACTION NO.** <u>3:15-cv-00277</u>

**GINA MCCARTHY, in her official capacity
as ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,**

**And**

**SHAWN M. GARVIN, in his official capacity
as REGIONAL ADMINISTRATOR,
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY REGION 3,**

        **Defendants.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     This action arises under the citizen suit provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"). Plaintiffs seek a declaration that the United States Environmental Protection Agency (EPA) has failed to perform its non-discretionary duty to respond to Plaintiffs' petition seeking withdrawal of the State of West Virginia's authority to administer the National Pollutant Discharge Elimination System (NPDES) within its borders and an injunction ordering it to promptly respond.

2.     Alternatively, this action arises under Administrative Procedure Act, 5 U.S.C. §§ 501 et seq. (hereinafter "the APA"). Plaintiffs seek a declaration that the United States Environmental Protection Agency (EPA) has unreasonably delayed responding to Plaintiffs' petition seeking withdrawal of the State of West Virginia's authority to administer the National Pollutant Discharge Elimination System (NPDES) within its borders and an injunction ordering it to promptly respond.

3.     On June 17, 2009, pursuant to CWA section 402(c)(3), 33 U.S.C. § 1342(c)(3), Plaintiffs submitted a petition to Defendants' predecessors at EPA asking them "to evaluate the systematic failure of West Virginia to administer and enforce the National Pollutant Discharge Elimination System program and to withdraw the delegation of the program from the West Virginia Department of Environmental Protection." June 17, 2009 Petition ("the June 17th Petition") at 1, attached as Exhibit A. The petition identified numerous ways in which the West Virginia Department of Environmental Protection's ("WVDEP" or "West Virginia") administration of its NPDES permitting and enforcement program failed to meet the requirements of the Act, resulting in widespread harm to the State's waters. On July 31, 2009, Plaintiffs submitted a supplement to the June 17th Petition. July 31, 2009 Supplement ("the June 31st Supplement"), attached as Exhibit B. On November 13, 2009, Plaintiffs submitted a second supplement to the June 17th Petition. November 13, 2009 Supplement ("the November 13th Supplement"), attached as Exhibit C. The June 17th Petition, the June 31st Supplement, and the November 13th Supplement (hereinafter, collectively "the Petition" or "Plaintiffs' Petition") focused on West Virginia's failure to adequately regulate pollution discharges from the coal mining industry.

4.      As of the filing of this complaint, more than five years after receiving Plaintiffs'

Petition, EPA has not offered any substantive written response and has taken no action to

withdraw the NPDES authority from the WVDEP. On information and belief, the vast majority

of the failures identified in the Petition and two Supplements remain unaddressed, leading to

ongoing degradation of West Virginia's waters.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal

question) and 33 U.S.C. § 1365 (Clean Water Act citizens' suit provision).

6.      Alternatively, this court has jurisdiction over this action pursuant to 28 U.S.C. §

1331 (federal question) and 5 U.S.C. § 702 (Administrative Procedure Act).

7.      On November 7, 2014, Plaintiffs gave notice to the Defendants of their failure to

perform their non-discretionary duty to respond to Plaintiffs' Petition and of Plaintiffs' intent to

file suit if Defendants did not respond within 60 days, as required by Section 505(b)(2) of the

CWA, 33 U.S.C. § 1365(b)(2). More than sixty days have passed since notice was served and

Defendants have not offered a response.

8.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(e) because a

substantial part of the events or omissions giving rise to this claim occurred in this district.

## PARTIES

9.      Plaintiff Ohio Valley Environmental Coalition ("OVEC") is a nonprofit

organization incorporated in Ohio.  Its principal place of business is in Huntington, West

Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse

grassroots organization dedicated to the improvement and preservation of the environment

through education, grassroots organizing, coalition building, leadership development, and media

outreach.  OVEC has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

10.    Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a nonprofit organization incorporated in West Virginia.  It has approximately 1,700 members.  It works for the conservation and wise management of West Virginia's natural resources.

11.    Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

12.    Plaintiffs' members' use and enjoyment of the water resources of West Virginia for recreational, aesthetic, and other beneficial purposes are adversely affected by the Defendants' failure to respond to Plaintiffs' Petition.  Plaintiffs' members, including Vivian Stockman and others, use and enjoy rivers, streams, and lakes in the State where water quality is threatened by the WVDEP's failure to administer its NPDES program in accordance with the requirements of the CWA. Plaintiffs' members refrain from those activities or enjoy them less because of the WVDEP's failure to regulate pollution discharges as required by law. An order compelling Defendants to substantively respond to Plaintiffs' Petition would provide redress for those injuries.

13.    At all relevant times, Plaintiffs were and are "persons" as that term is defined by

the CWA, 33 U.S.C. § 1362(5), and the APA, 5 U.S.C. § 551(2).

14.    Plaintiffs and their members are persons with interests that are adversely affected by the Defendants' failure to respond to their Petition, and those interests in the use, enjoyment, and protection of waters of West Virginia from coal mining pollution are within the zone of interests sought to be protected by the Clean Water Act.

15.    Gina McCarthy is sued in her official capacity as Administrator of the United States Environmental Protection Agency, which is the agency of the federal government to which administration and enforcement of the Clean Water Act ("CWA" or "the Act") has been delegated by Congress. Pursuant to CWA section 402(c)(3), the Administrator is responsible for responding to petitions and commencing proceedings to withdraw a state's NPDES delegation.

16.    Shawn M. Garvin is sued in his official capacity as the Regional Administrator of the United States Environmental Protection Agency's Region 3, which is the office of EPA directly responsible for oversight of the State of West Virginia's administration of its NPDES program.

## STATUTORY AND REGULATORY FRAMEWORK

17.    The Clean Water Act, 33 U.S.C. § 1251 *et seq.*, is a comprehensive water quality statute designed "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. 1251(a).

18.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit issued pursuant to the Act. Section 402 of the Act, 33 U.S.C. § 1342, establishes the National Pollution Discharge Elimination System ("NPDES") under which the Administrator of EPA may issue permits for the discharge of pollutants into waters of the United States, upon the

condition that such discharges will meet all applicable requirements of the CWA.

19.   Permits issued pursuant to the NPDES program define the obligations of the dischargers under the CWA, including setting limitations on rates and quantities of pollutant discharges and establishing monitoring and reporting requirements. 33 U.S.C. § 1342(a)(2); 40 C.F.R. Part 122. Compliance with an NPDES permit is deemed compliance with the Act as a whole. 33 U.S.C. § 1342(k); 40 C.F.R. § 122.5.

20.   Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows the EPA Administrator to authorize any state to administer its own NPDES program upon an application showing that the state possesses adequate authority to carry out all aspects of the program. Authorized state NPDES programs must at all times be in accordance with the federal program. Id. at § 1342(c)(2).

21.   EPA retains significant oversight over delegated programs. If at any time the Administrator determines that a state is not administering its NPDES program in accordance with the requirements of the federal program, she may initiate proceedings to withdraw the state's NPDES authorization. Section 402(c)(3) of the CWA states that:

> Whenever the Administrator determines after public hearing that a State is not administering a program approved under this section in accordance with requirements of this section, he shall so notify the State and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days, the Administrator shall withdraw approval of such program. The Administrator shall not withdraw approval of any such program unless he shall first have notified the State, and made public, in writing, the reasons for such withdrawal.

33 U.S.C. § 1342(c)(3).

22.   EPA's regulation implementing Section 402(c)(3) states that the "Administrator may order the commencement of withdrawal proceedings on his or her own initiative or in response to a petition from an interested person." 40 C.F.R. § 123.64(b)(1). The regulation

makes clear that EPA has a mandatory duty to respond to a petition submitted pursuant to CWA section 402(c)(3), stating that "[t]he <u>Administrator will respond in writing to any petition</u> to commence withdrawal proceedings." <u>Id.</u> (emphasis added). Those authorities create a non-discretionary duty for EPA to respond in writing to petitions seeking withdrawal of delegation from non-compliant state programs. <u>See</u> <u>Save the Valley, Inc. v. U.S. E.P.A.</u>, 99 F.Supp.2d 981, 984–86 (S.D. Ind. 2000).

     23.     EPA's regulations explain the that circumstances where withdrawal of a state's NPDES authority is appropriate include:

> (1) Where the State's legal authority no longer meets the requirements of this part, including:
> > (i) Failure of the State to promulgate or enact new authorities when necessary; or
> > (ii) Action by a State legislature or court striking down or limiting State authorities.
>
> (2) Where the operation of the State program fails to comply with the requirements of this part, including:
> > (i) Failure to exercise control over activities required to be regulated under this part, including failure to issue permits;
> > (ii) Repeated issuance of permits which do not conform to the requirements of this part; or
> > (iii) Failure to comply with the public participation requirements of this part.
>
> (3) Where the State's enforcement program fails to comply with the requirements of this part, including:
> > (i) Failure to act on violations of permits or other program requirements;
> > (ii) Failure to seek adequate enforcement penalties or to collect administrative fines when imposed; or
> > (iii) Failure to inspect and monitor activities subject to regulation.
>
> (4) Where the State program fails to comply with the terms of the Memorandum of Agreement required under § 123.24 (or, in the case of a sewage sludge management program, § 501.14 of this chapter).
>
> (5) Where the State fails to develop an adequate regulatory program for developing water quality-based effluent limits in NPDES permits.
>
> (6) Where a Great Lakes State or Tribe (as defined in 40 CFR 132.2) fails to

> adequately incorporate the NPDES permitting implementation procedures promulgated by the State, Tribe, or EPA pursuant to 40 CFR part 132 into individual permits.

40 C.F.R. § 123.63(a).

24.    At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer an NPDES program for regulating the discharges of pollutants into the waters of the State.  Permits issued under this program are issued by the WVDEP and are known as "WV/NPDES" permits.

25.    Section 505(a)(2) of the CWA, 33 U.S.C. § 1365(a)(2), authorizes any "citizen" to "commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."

26.    In an action brought under Section 505(a) of the CWA, the district court has jurisdiction to "order the Administrator to perform such act or duty." 33 U.S.C. § 1365(a).

27.    Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

28.    The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

29.    The APA defines "agency action" to include those instances where an agency has failed to act. 5 U.S.C. § 551(13).

30.    The EPA is a federal agency whose actions are subject to review under the APA. See 5 U.S.C. § 551(1).

31.     The APA mandates that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

32.     The APA provides that a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

33.     On June 17, 2009, Plaintiffs submitted a petition to Defendants' predecessors at EPA asking them "to evaluate the systematic failure of West Virginia to administer and enforce the National Pollutant Discharge Elimination System program and to withdraw the delegation of the program from the West Virginia Department of Environmental Protection." Exhibit A at 1. The groups specifically requested that EPA formally respond to their petition in writing, as required by 33 U.S.C. § 1342(c)(3) and 40 C.F.R. § 123.64(b)(1). Id. at 4.

34.     The June 17th Petition provided overwhelming evidence that West Virginia is failing to administer its NPDES program in accordance with the requirements of the CWA. The specific failures described in the June 17th Petition, supported by extensive citations and exhibits, primarily relate to WVDEP's inadequate regulation of pollution from coal mining operations and include:

    a.  Unlawfully requiring the consideration of compliance cost into NPDES permitting appeals decisions (Ex. A at 2–3);

    b.  Refusing to apply the anti-backsliding provision of section 402(o) of the Act (Ex. A at 4–5);

    c.  Failing to permit point source discharges from bond forfeiture sites and abandoned mine lands (Ex. A at 5–7);

    d.  Failing to adequately protect its streams from toxic selenium pollution by not including protective effluent limits in NPDES permits (Ex. A at 7–11);

    e.  Failing to comply with public participation requirements (Ex. A at 12–13);

    f.   Failing to enforce the selenium water-quality standard and water-quality based effluent limits, and other limits at mining sites, industrial facilities, and municipal facilities (Ex. A at 13–18);

    g.   Failing to submit annual statistical reports as required by the 1982 Memorandum of Agreement between EPA and West Virginia (Ex. A at 18);

    h.   Failing to follow its antidegradation policy (Ex. A at 19–20);

    i.   Failing to develop total maximum daily loads for ionic stress and continuing to issue NPDES permits to new sources of ionic stress that will discharge into biologically impaired streams (Ex. A at 21–22);

    j.   Failing to implement its tissue-based human health water-quality criterion for mercury and using an insupportably high criterion for mercury (Ex. A at 22);  and

    k.   Unlawfully allowing and extending compliance schedules (Ex. A at 3–4, 10–11; Ex. B at 6–7; Ex. C at 1–4).

35.    The petition informed EPA that West Virginia's failure to administer its NPDES program in accordance with the requirements of the CWA was having dire consequences for the health of the State's waters, citing the thousands of miles of rivers and streams that West Virginia itself has determined are impaired. Ex. A at 4. It concluded by stating that "[b]ecause the harm associated with the State's failure to maintain and administer its NPDES program is severe, irreversible and ongoing, we ask EPA to respond to and take action based on this petition as soon as possible." Id. at 26.

36.    More than five years have passed since Plaintiffs sent their Petition to EPA. Plaintiffs have yet to receive a formal written response as requested and as required by 33 U.S.C. § 1342(c)(3) and 40 C.F.R. § 123.64(b)(1).

37.    On information and belief, the majority of the failures identified in Plaintiffs Petition continue to this day.

38.    Further failures in the intervening years prompted Plaintiffs and other environmental groups to send an additional, separate petition to EPA on September 3, 2014,

requesting that EPA initiate formal proceedings under 40 C.F.R. § 123.64(b) to withdraw approval of the State of West Virginia's NPDES program on grounds independent from those stated in the June 17th Petition, June 31st Supplement, and November 13th Supplement. EPA has not responded to that petition.

39.     Pursuant to Section 505(b)(2) of the CWA, 33 U.S.C. § 1365(b)(2), Plaintiffs sent a notice of intent letter ("NOI"), postmarked on November 7, 2014, notifying the Defendants of their failure to perform their non-discretionary duty to respond to Plaintiffs' Petition. The NOI notified Defendants of Plaintiffs' intent to file suit if Defendants did not respond within 60 days. The NOI was sent by certified mail, return receipt requested, to the following persons:  Gina McCarthy, Administrator of EPA; Shawn M. Garvin, Regional Administrator of EPA Region 3; and Eric Holder, United States Attorney General.

### FIRST CLAIM FOR RELIEF
(Failure to Perform Non-Discretionary Duty Under the Clean Water Act)

40.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 39 supra.

41.     Clean Water Act section 402(c)(3), 33 U.S.C. § 1342(c)(3), and 40 C.F.R. § 122.64(b)(1) establish a non-discretionary duty for the Administrator of EPA to respond in writing to any petition seeking the withdrawal of a state NPDES program delegation.

42.     Plaintiffs' submission of their June 17, 2009 Petition and July 31, 2009 and November 13, 2009 Supplements triggered the EPA's non-discretionary duty to provide a written response.

43.     More than five years have passed since Plaintiffs submitted their petition and EPA has yet to fulfill its duty to provide a written response.

44.     On information and belief, absent an Order from this Court, EPA will remain in

violation of the CWA as a result of its failure to perform the non-discretionary duty to respond in writing to petitions submitted pursuant to CWA section 402(c)(3), 33 U.S.C. § 1342(c)(3).

## SECOND, ALTERNATIVE CLAIM FOR RELIEF
(Unreasonable Delay Under the Administrative Procedure Act)

45.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 39 supra.

46.     The Administrative Procedure Act mandates that all federal agencies shall "within a reasonable time . . . proceed to conclude a matter presented to it," 5 U.S.C. § 555(a), and provides that a court shall "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

47.      Plaintiffs' submission of their June 17, 2009 Petition and July 31, 2009 and November 13, 2009 Supplements triggered the EPA's duty under the APA to respond and proceed to conclude the matters presented in Plaintiffs' Petition within a reasonable time.

48.     The more than five year delay between Plaintiffs' submission of their Petition and the filing of this action is patently unreasonable.

49.     On information and belief, absent an Order from this Court, EPA's unreasonable delay in responding to Plaintiffs' Petition will continue.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1).     Declaring that EPA has failed to perform its non-discretionary duty under the Clean Water Act to respond in writing to Plaintiffs' Petition;

(2).     Alternatively, declaring that the EPA's failure to respond to Plaintiffs' Petition for more than five years constitutes an unreasonable delay under the Administrative Procedure Act;

(3).     Ordering EPA to promptly provide a substantive, written response to Plaintiffs'

Petition seeking withdrawal of West Virginia's NPDES program delegation;

  (4). Awarding Plaintiffs' attorney fees and all other reasonable expenses incurred in

pursuit of this action; and

  (5). Granting other such relief as the Court deems just and proper.

       Respectfully submitted,

       /s/ Amy Vernon-Jones
       Amy Vernon-Jones (W.Va. Bar No. 12027)
       Joseph M. Lovett (W.Va. Bar No. 6926)
       Appalachian Mountain Advocates
       P.O. Box 507
       Lewisburg, WV 24901
       (304) 645-9002

       *Counsel for Plaintiffs*